## Green, Appellant, *v.* Dick & Shope.

*Promissory notes — Negotiability — Confession of judgment — Holder in due course—Act of May 16, 1901, P. L. 194.*

1. A warrant of attorney authorizing confession of judgment "at any time after the above note becomes due" does not affect the negotiability of the instrument under the provisions of Section 5 of the Act of May 16, 1901, P. L. 194 (Negotiable Instrument Law). An obligation otherwise negotiable does not lose its negotiable quality, by reason of a warrant of attorney authorizing the confession of judgment after the debt becomes payable.

2. Where the title of the holder of a promissory note is not defective, the burden of proof rests upon the defendant to show that the plaintiff obtained the obligation under circumstances which would permit the makers to defend, as against the payee, and when a petition on rule to open a judgment fails to allege any such defect, the court does not err in discharging the rule.

Argued April 16, 1919.   Appeal, No. 111, April T., 1919, by plaintiff, from order and decree of C. P. Indiana Co., Dec. T., 1916, No. 121, opening judgment in case of A. W. Green, now for the use of The Kinsman Banking Co., *v.* Laura E. Dick and Clyde H. Shope.   Before OR-LADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, WILLIAMS and KELLER, JJ.   Reversed.

Rule to open judgment.   Before LANGHAM, P. J.
The opinion of the Superior Court states the case.
The court made absolute the rule to open judgment.

*Error assigned* was the order of the court.

*G. J. Feit,* of *Peelor & Feit,* and with him *Ernest Stewart,* for appellant.—The note was a negotiable instrument in the hands of bona fide purchaser for value before maturity and the court should have refused to open the judgment: Empire National Bank v. Highgrade O. R. Co., 260 Pa. 255; Second National Bank of Pittsburgh

v. Hoffman, 229 Pa. 429; Howie v. Lewis, 14 Pa. Superior Ct. 237; Howie v. Lewis, 196 Pa. 558; Jenkintown N. Bank's App., 124 Pa. 337.

*William Banks,* and with him *Samuel Cunningham,* for appellee.—The case was for the jury to determine whether or not the plaintiff was a holder in good faith before maturity: Second National Bank v. Hoffman, 229 Pa. 429; Davis v. Snyder, 248 Pa. 568; Levy v. Gilligan, 244 Pa. 276.

OPINION BY HENDERSON, J., July 17, 1919:

The plaintiff entered judgment on a promissory note containing a warrant of attorney authorizing the confession of judgment. The defendants presented a petition asking that the judgment be opened to permit them to make defense; on which petition a rule was granted. The rule was subsequently made absolute on depositions taken. The complaint of the appellant is that the obligation on which the judgment was entered was a promissory note; that it was endorsed to the plaintiff bank before maturity in due course; and that the defense set up is not available in this action. The obligation with two others of like date and amount were given by the defendants to A. W. Green, the payee, for the purchase-price of a stallion bought by them from him. Shope made the contract with Green for the horse on the sixth of March, 1915, at East Orville, Ohio. The notes were signed at the home of the defendants near Vintondale, Pa., and sent to Green by mail. The horse was shipped to the defendants and received on the eleventh day of March, 1915, and kept until the latter part of February, 1916. The petition to open the judgment sets forth that in February, 1916: "Said stallion proving unsatisfactory, the said A. W. Green agreed to exchange said stallion for another stallion of equal value, and in pursuance of such arrangement, on or about May, 1916, the exchange was made. The said Clyde H. Shope receiving another stal-

lion in place of the one first purchased which had heretofore been duly returned to the plaintiff, A. W. Green." The reason given by Shope for the exchange was that the first horse "wasn't a sure breeder." The horse received in place of that first sold was called Col. Parkman. By letter dated February 3, 1916, Green had proposed that the defendants return the horse to him if he was unsatisfactory to them and take the horse Col. Parkman in place of him, or if they preferred, take another horse from his place, and if they chose to do this, he, Green, would pay the freight on the horse returned to him. At the time of the exchange a written guarantee was given by Green that the horse was a reliable breeder and that if he did not fill the guarantee, after a fair trial, Green would furnish another horse of equal value in his place. The allegation of the defendants was that the Parkman horse was not in sound condition when he was received by them, and that he grew worse, from time to time, and that he died in about four months after he was received. The business with respect to the exchange of the horse was conducted by Mr. Kuhn, an agent of Green's, living in the vicinity of the defendant's residence, and it may be inferred from the evidence that the horse, Col. Parkman, was in that region when the exchange was agreed to. The plaintiff bank objected to the admissibility of the evidence of the defendants on the ground that it took the note for a valuable consideration before maturity without notice, and that it was therefore a holder in due course. The learned judge in disposing of the rule opened the judgment and directed the case to be placed on the list for trial by a jury without passing on the question of the negotiable or nonnegotiable character of the note in question. In so doing he failed to consider the important preliminary question whether the defense proposed to be introduced is available against the present holder of the note; for if the title of the payee was not defective and the note was negotiable, the endorsee took it free from the defense now offered, and the defendants

are not entitled to the relief which they seek by an appeal to the equitable power of the court. The 59th Section of the Act of May 16, 1901, P. L. 194, provides that every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course. The 55th section of the act defines a defective title: "the title of a person who negotiates an instrument is defective within the meaning of this Act when he obtained the instrument or any signature thereto by fraud, duress, force, or fear, or other unlawful means, or for any illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud." It will thus be seen that to put the holder of the note on proof of the bona fides of his title, it is necessary for the defendant to show that the title of the person who negotiated the instrument was defective by reason of one or more of the causes enumerated in this section. If the holder's title was not defective, the burden of proof rests on the defendants to show that the plaintiff obtained the obligation under circumstances which permit the makers to defend as against the payee. It was argued by the appellee that the note is not negotiable because of the fact that the warrant of attorney authorizes a confession of judgment "at any time after the above note became due"; whereas Section 5 of the Act of 1901 provides that the negotiable character of an instrument, otherwise negotiable, is not affected by a provision which authorizes a confession of judgment "if the instrument be not paid at maturity." It is obvious, however, from a consideration of section 10 that it was not the intention to make the effect of the warrant to confess judgment depend on the use of the exact language above quoted. The section referred to provides that "The instrument need not follow the language of this act, but any terms are sufficient which clearly indicate an intention to conform to the

requirements hereof." It was the legislative purpose to provide that an obligation, otherwise negotiable, should not lose its negotiable quality by reason of a warrant of attorney authorizing the confession of judgment after the debt became payable. The reason is apparent; by the entry of a judgment before maturity, the instrument would lose its negotiable character, its quality would become fixed as a judgment, and it could no longer be passed from hand to hand by endorsement and delivery; but after maturity, it becomes discredited if not paid, and no convincing reason could be given why it should not be collected by the use of a warrant of attorney as well as by a summons and judgment. A note not paid at maturity is in the same situation as a note in the hands of a holder after it becomes due. The language of the obligation under consideration is therefore in substance and effect the same as that expressed in the statute. We regard the note on which the judgment was entered as a negotiable instrument, and as the statute makes the endorsee a holder in due course prima facie, the defense which the makers set up is not available unless the title of the payee was defective. It is not alleged in the petition that there was such defect. The petition at the most alleges a failure of consideration or a breach of warranty. The evidence of the defendant, Shope, shows that he went to Ohio to buy a horse from Green. There is no allegation that he did not see and examine the horse, and there is no suggestion that there was any deceit or willful misrepresentation in regard to the condition or quality of the animal. That he was not as serviceable as the defendants thought he ought to be was a fact to be discovered afterwards. So far as appears from the testimony, it was the ordinary transaction of the purchase of a horse and the delivery of obligations to secure the payment of the purchase money therefor. If there were any facts on which an averment might be rested, that Green knew of any defective quality of the horse, and wrongfully misrepresented his condition that should have

266, (1919).]          Opinion of the Court.

been averred and supported by testimony, but the case is lacking in that respect. We regard the evidence as insufficient to show fraudulent conduct on the part of Green at the time he sold the horse and received the notes which would make his title defective and thereby shift the burden of proof to the banking company to show that the obligation was taken in due course.

The decree of the court is reversed at the cost of the appellees.